STATE ex rel. OTTO K. SAUER and Others v. DISTRICT COURT OF
RAMSEY COUNTY.

November 1, 10, 1898.

Nos. 11,500—(265).

Proceeding to Correct Official Ballot—G. S. 1894, § 48.

    *Held*, any duly-qualified elector may proceed, under G. S. 1894, § 48, to
have the official ballot corrected.

"Independent Democrats"—Evidence of Fraud in Nominating Con-
vention of 1898—Certiorari.

    At the general election in 1896 several candidates, styling themselves
"Independent Democrats," polled in Ramsey county, on an average, 1,300
votes, and one polled as high as 2,343 votes. The total vote polled in the
county was about 29,000. *Held*, the court below was warranted, on the
evidence, in finding that shortly prior to the election of 1898 ten certain
persons acted fraudulently in assuming to act as the county committee of
the "Independent Democratic Party," in calling a county convention to
nominate candidates, in publishing once in an obscure place in a daily
paper a notice of such call, in meeting at the time and place appointed,
and nominating some of themselves as candidates for county offices, and
adjourning for eight days, at which time only seven of them met again,
and nominated six of themselves as such candidates. *Held*, further, the
court was warranted in finding that the organization of the "Independent
Democrats" was merely a bolt or temporary movement in 1896, which
was not intended as a permanent organization, and which died after the
election of that year.

Writ of certiorari to the district court for Ramsey county, to re-
view an order of said court, Brill, Kelly and Otis, JJ., ordering the
county auditor of said county to strike from the official county
ballot about to be printed and voted at the ensuing general election
the names of Otto K. Sauer and others, candidates for the offices of
sheriff, county surveyor, clerk of the district court, register of
deeds, judge of probate, county treasurer and county auditor re-
spectively, together with the words "Independent Democrat" set
opposite each of said names. Affirmed.

  *T. R. Palmer* and *O. J. Cook*, for relators.

  *D. D. Williams* and *O. H. O'Neill*, for respondent.

CANTY, J.

On October 6, 1898, certificates of nomination were filed with the county auditor of Ramsey county, signed by one Fuller, as chairman, and one Sauer, as secretary, of the "Independent Democratic Party," in which certificates it was stated that at an adjourned convention of that party held on October 4, 1898, the relators were respectively nominated as candidates for the different county offices in that county. The auditor proceeded to place these names on the official ballot for the election to be held November 8, 1898. Thereupon, under G. S. 1894, § 48, one Barton procured from a judge of the district court an order to show cause, directed to said auditor, said Fuller, said Sauer and said candidates, requiring them to show cause why the names of said candidates should not be stricken off of the ballot. Three of the judges sat at the hearing and the order was made absolute. Thereupon a writ of certiorari was sued out of this court to review said order.

1. It is urged by the relators that said Barton did not have any interest in the controversy which entitled him to procure the order to show cause in the court below. We cannot so hold. He was a duly-qualified elector of the county. Under our statute such an elector may contest an election after it has been held. G. S. 1894, § 190. If he may contest an election, we see no reason why he may not proceed, under said section 48, to prevent, before the election is held, an irregularity in the election proceedings.

2. The court below did not make any findings of fact, and, under the law, was not required to do so. If, under the evidence, there is any ground on which that court could have found that the relators are not entitled to a place on the official ballot, the order of that court must be sustained. In our opinion there is such a ground, if there are not more than one.

The court was warranted in finding that the proceedings under which relators claim the right to go upon the ballot were conceived and carried out for a fraudulent purpose. The notice of the call for a convention was published but once, four days before the evening of the convention, and was printed in small type in the want column in an obscure part of a daily paper. The notice did not state whether a mass convention or a delegate convention would be

held.   The place of meeting was an attorney's office, and the time of meeting was in the evening.   When the time for the convention arrived, it did not seem to surprise the promoters of the scheme that only ten persons had responded to the call, these ten being the ones who had originally conceived the scheme.   They did not look about them, or attempt to ascertain why so small a number responded to the call to represent an alleged party which at the last prior election polled on an average about 1,300 votes, and for one candidate as many as 2,343 votes.   They did not adjourn the alleged convention to a later day for the purpose of getting a larger attendance, but these ten proceeded with great alacrity to nominate three or four of themselves to county offices in a county which at the last prior election polled over 29,000 votes.   After nominating three or four candidates, the convention adjourned to October 4, at the same place, at which time and place only seven persons met.   Some of those already nominated withdrew, and the respondents nominated each other to six of the offices aforesaid, with the assistance of one other person.

It does not appear that it was customary for this party, or any other political party, to hold mass conventions in Ramsey county; and whether, under any circumstances, so small a number could hold a mass convention in so populous a county, we need not consider.   Neither are we prepared to say that the failure to state in the notice whether the convention would be a mass convention or a delegate convention would, taken alone, be fatal, at least when objection is taken at so late a day that a new convention cannot be called in time to make nominations.   But the small attendance at this alleged convention, taken in connection with the other circumstances in the case, warranted the court below in finding that the ten promoters of this scheme did not represent the alleged political party, or any one but themselves, in any of the steps taken, which they well knew.

Again, the court was warranted in finding, from all the circumstances, that the organization of the "Independent Democrats" was merely a bolt or temporary movement, which was not intended as a permanent political party.   The name itself tends to prove this, and so does the fact that only ten alleged members ever appeared

at the alleged convention, or showed any concern about its affairs since the election of 1896. From all the circumstances, the court was warranted in finding that by the common consent of the great bulk of its members the organization died after that election, and that the ten persons who assumed to act as the party did so for their own selfish ends.

The order brought up for review was affirmed at the hearing, and this opinion is rendered accordingly.